UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re                                                          Chapter  7

     Nigel Collins,                                      Case No.  12-46990-CEC

           Debtor.

-------------------------------------------------------X

Gregory Messer, as Chapter 7 Trustee
of Nigel Collins,

              Adv. Pro. No. 14-1132-CEC

          Plaintiff,

      -against-

Raquel Collins and School Data Corp.,

          Defendants.

-------------------------------------------------------X

<u>DECISION</u>

APPEARANCES:

| | |
|---|---|
| David A. Blansky, Esq. | Andrew Citron |
| LaMonica Herbst & Maniscalco LLP | Law Offices of Andrew Citron |
| 3305 Jerusalem Avenue | 30 Wall Street, 8th Floor |
| Wantagh, NY 11793 | New York, NY 10005 |
| *Attorney for Plaintiff* | *Attorney for Defendants* |

CARLA CRAIG
Chief United States Bankruptcy Judge

This adversary proceeding was commenced by Gregory Messer, Esq., trustee for the estate of Nigel Collins (the "Trustee"), against Raquel Collins ("Collins") and School Data Corp. ("School Data" and collectively with Collins, "Defendants"). The Trustee seeks a judgment against Defendants on the basis of an alleged fraudulent scheme whereby Nigel Collins (the "Debtor") caused the assets of his closely-held company, Learning Directions LLC ("Learning Directions") to be transferred to a new corporation nominally controlled by Collins, his wife. According to the Trustee, the new corporation, School Data, conducted the same business as Learning Directions, and the alleged transfers occurred at a time when Learning Directions and the Debtor had outstanding debts that ultimately resulted in a state court judgment against them.

Before the Court is Defendants' motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b). For the reasons stated below, Defendants' motion is granted in part and denied in part.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A),(E),(H) and (O).

## BACKGROUND

All the facts herein are taken from the Trustee's pleadings, except where noted, and are assumed to be true for purposes of this decision. On August 13, 2001, the Debtor formed a New York Limited Liability Company under the name Learning Directions, LLC. (Compl. ¶¶ 15-16,

ECF Doc. No. 1.)[1] The Debtor was the majority owner and president of Learning Directions. (Compl. ¶¶ 18, 25, ECF Doc. No. 1.) Learning Directions operated out of a business office located in the building where the Debtor and Collins reside. (Compl. ¶¶ 20-21, ECF Doc. No. 1.) Learning Directions paid rent for the use of the space. (Compl. ¶ 22 ECF, Doc. No. 1.) Learning Directions' business was to provide services, software, and analysis to schools in and around New York City. (Compl. ¶¶ 23-24, ECF Doc. No. 1.) Learning Directions dealt primarily with the New York City Department of Education (the "DOE") and had a vendor license to market products to schools in New York City. (Compl. ¶ 24, ECF Doc. No. 1.)

In the course of his work at Learning Directions, the Debtor obtained confidential, proprietary information and trade secrets owned by Learning Directions consisting of

> knowledge of important points of contacts at specific schools in charge of outsourcing and approving contracts with outside vendors for goods and services to schools, contact information about individuals within the New York City Department of Education who have authority regarding approving contracting for services and/or products for schools with outside vendors, contact information and inside information as to how the process at the New York City Department of Education functions/operates with regard to outside vendors obtaining approval for contracts to supply goods and services to the New York City Department of Education and its schools, points of contact and information regarding the names and identities of outside consulting groups and individuals who can facilitate a vendor obtaining contracts with the New York City Department of Education and its schools, the actual and potential software and testing needs of public and non-public schools in the greater New York City area, and profitable lines of business regarding the goods and services needed [at] such schools and the New York City Department of Education, among other things.

 (Compl. ¶¶ 26-27, ECF Doc. No. 1.) The Debtor and Learning Directions also created software related to the business. (Compl. ¶ 28, ECF Doc. No. 1.) The Debtor and Learning directions obtained this proprietary information and software by expending time and effort, and the information is not readily accessible by the public. (Compl. ¶ 29, ECF Doc. No. 1.) The Debtor,

---

[1] Citations to "ECF Doc. No." are to papers filed on the docket in this adversary proceeding, No. 14-1132, identified by document number, unless otherwise indicated.

as the president and majority member of Learning Directions, had a legal and equitable interest in the assets and profits of Learning Directions. (Compl. ¶ 31, ECF Doc. No. 1.)

In August, 2008, the Debtor entered into a loan agreement with Sovereign Bank on behalf of Learning Directions for a $95,000 line of credit. (Compl. ¶ 33, ECF Doc. No. 1.) The Debtor also executed a personal guaranty of the loan. (Compl. ¶ 38, ECF Doc. No. 1.) Learning Directions subsequently defaulted on the loan, and was notified of the default by NTL Capital LLC, assignee of Sovereign Bank. (Compl. ¶ 41-42, ECF Doc. No. 1.) NTL Capital LLC filed suit against Learning Directions and the Debtor and obtained a judgment against them in the amount $113,895.00 in May of 2012. (Compl. ¶¶ 44-46, ECF Doc. No. 1.)

In October, 2009, School Data was founded. (Compl. ¶ 48, ECF Doc. No. 1.) Collins, the Debtor's wife, is the sole shareholder of School Data. (Compl. ¶ 50, ECF Doc. No. 1.) Prior to the founding of School Data, Collins worked as an attorney for a non-profit entity. (Compl. ¶ 51, ECF Doc. No. 1.) School Data maintained its place of business at the same address as Learning Directions, which is located in the building where the Debtor and Collins reside. (Compl. ¶ 53, ECF Doc. No. 1.) Starting in 2010, the Debtor ceased using Learning Directions for contracts with the DOE and New York City schools and began using School Data instead. (Compl. ¶¶ 59-60, ECF Doc. No. 1.) The Debtor became an employee of School Data at that time. (Compl. ¶ 52, ECF Doc. No. 1.)

As Learning Directions ceased doing business and School Data began to enter into contracts to provide goods and services to the DOE and New York City schools, Learning Directions transferred property to School Data. (Compl. ¶¶ 54, 58, ECF Doc. No. 1.) This property included

> proprietary confidential business information and trade secrets of Learning Directions regarding proprietary information about how a vendor obtains contracts

for goods or services with the New York City Department of Education and New York City schools, what types of goods or services are needed by the New York City Department of Education and its schools, how to get a contract approved to provide those entities with goods and services, as well as computers, software, office equipment and customer goodwill.

(Compl. ¶ 55, ECF Doc. No. 1.) School Data paid no consideration to Learning Directions in exchange for these transfers. (Compl. ¶ 54, ECF Doc. No. 1.)

The Trustee filed the Complaint on September 24, 2014. Defendants filed their Motion to Dismiss on January 20, 2015. The Trustee filed Opposition to the Motion to Dismiss on February 12, 2015. Defendants filed their Reply to the Trustee's Opposition on February 17, 2015. A hearing was held on the Motion to Dismiss on May 12, 2015 and the matter was taken under advisement.

## DISCUSSION

### Standard For A Motion To Dismiss Under Fed. R. Bankr. P. 7012(b)

Rule 8(a)(2),[2] incorporated by reference in Bankruptcy Rule 7008,[3] requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); see Fed. R. Bankr. P. 7008. Rule 12(b)(6), incorporated by reference in Bankruptcy Rule 7012, provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6); see Fed. R. Bankr. P. 7012(b). The purpose of Rule 12(b)(6) "'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

---

[2] References to a "Rule" or "Rules" are to the Federal Rules of Civil Procedure.
[3] References to a "Bankruptcy Rule" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  In making this determination, a court must liberally construe the complaint, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  See <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir.), <u>cert.</u> <u>denied</u>, 554 U.S. 930 (2008).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>see</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679.  In other words, plausibility "'depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.'" <u>Fink v. Time Warner Cable</u>, 714 F.3d 739, 741 (2d Cir. 2013) (quoting <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, 647 F.3d 419, 430 (2d Cir. 2011)).

Two of the Trustee's claims allege fraud and must be pled according to Rule 9(b). Rule 9(b), incorporated by reference in Bankruptcy Rule 7009, requires a pleading, when alleging fraud, to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); <u>see</u> Fed. Bankr. R. 7009. Fraudulent intent may be alleged generally, but the plaintiff is required to plead sufficient facts to support a strong inference of fraudulent intent. <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994). In bankruptcy, "courts take a liberal approach in construing allegations of actual fraud pled by a trustee, because the trustee is a third party outsider to the transaction and must plead fraud based upon second hand knowledge." <u>Gredd v. Bear, Stearns</u>

Security Corp. (In re Manhattan Inv. Fund Ltd.), 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002). In such situations, "courts often look at the totality of the circumstances as well as the badges of fraud surrounding the transfers." Id.

The Adequacy of the Complaint

In reviewing the well-pleaded facts to determine whether a complaint states a claim for relief, common sense and judicial experience must be employed to evaluate the complaint in context. Iqbal, 556 U.S. at 679. This exercise involves more than reviewing each allegation and claim line by line. To decide whether a claim is sufficiently pled under Rule 8, it is appropriate to consider the complaint as a whole in order to assess whether the plaintiff has stated a claim for relief that crosses the line from possible to plausible.

Here, the Trustee has alleged plausible claims. The alleged facts, taken as true, present a scenario in which the Debtor, in an effort to avoid creditors, closed down Learning Directions and opened a new company, School Data, in his wife's name. School Data conducted essentially the same business in the same location with the same customers and employees as Learning Directions. (Compl. ¶¶ 56, 59-60, ECF Doc. No. 1.)

The nature of the business is also an important part of the context in which the Complaint must be evaluated. The Complaint alleges that Learning Directions and School Data were service businesses that relied on proprietary information, developed by the Debtor for Learning Directions, consisting of

> knowledge of important points of contacts at specific schools in charge of outsourcing and approving contracts with outside vendors for goods and services to schools, contact information about individuals within the New York City Department of Education who have authority regarding approving contracting for services and/or products for schools with outside vendors, contact information and inside information as to how the process at the New York City Department of Education functions/operates with regard to outside vendors obtaining approval for contracts to supply goods and services to the New York City Department of

6

Education and its schools, points of contact and information regarding the names and identities of outside consulting groups and individuals who can facilitate a vendor obtaining contracts with the New York City Department of Education and its schools, the actual and potential software and testing needs of public and non-public schools in the greater New York City area, and profitable lines of business regarding the goods and services needed [at] such schools and the New York City Department of Education, among other things.

(Compl. ¶ 27, ECF Doc. No. 1.) The Complaint alleges that School Data used the proprietary information, contacts, trade secrets and goodwill developed for Learning Directions to apply for DOE contracts under a new name. (Compl. ¶ 60, ECF Doc. No. 1.) The Debtor became an employee of School Data, continued the business under that name, and used the same computers and the same information in the same space as Learning Directions. (Compl. ¶¶ 52, 56, 60-61, ECF Doc. No. 1.) In short, the business of Learning Directions continued under School Data's name and under the Debtor's control. (Compl. ¶¶ 60, 114-15, ECF Doc. No. 1.)

It is also significant that School Data was owned by the Debtor's wife. It is well-established that "[t]he transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property, is a classic badge of fraud." Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1583 (2d Cir. 1983).

These allegations more than adequately state plausible claims for relief. Defendants' challenges to the adequacy of the Complaint principally consist of denials of key factual allegations. These factual arguments are insufficient to support a motion to dismiss. See, e.g., Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir. 2001) (holding that fact-specific questions cannot be resolved on a motion to dismiss); O'Hearn v. Bodyonics, Ltd., 22 F. Supp. 2d 7, 10 (E.D.N.Y. 1998) (holding that the court does not weigh evidence at the motion to dismiss stage).

Each of Defendants' arguments will be addressed in turn below.

A.     Conveyance of Property (All Claims)

Defendants note that all the causes of action asserted in the Complaint are based on alleged transfers of property by Learning Directions to School Data. (Mot. to Dismiss at 3 n.4, ECF Doc. No. 14-1.)[4] Causes of action one through six are based on allegations of constructive or actual fraudulent transfers. The remaining six causes of action also rely in part on allegations that property was transferred from Learning Directions to School Data.

In their Motion and Reply, Defendants argue that nothing of value was transferred from Learning Directions to School Data. (Mot. to Dismiss at 3, ECF Doc. No. 14-1.) They claim that any alleged information or knowledge developed by Learning Directions and used by School Data was neither proprietary nor a trade secret and is publicly available on the DOE's website.[5] (Mot. to Dismiss at 5-6, ECF Doc. No. 14-1.) They also argue that the Trustee has failed to adequately allege the existence of any software that is claimed to have been transferred from Learning Directions to School Data. (Reply at 3-4, ECF Doc. No. 19.) Defendants further argue that the Trustee failed to allege that anything of value changed hands with respect to the lease for office space used by Learning Directions and then by School Data. (Mot. to Dismiss at 6, ECF Doc. No. 14-1.)

1.  *Intangible Property*

The Trustee alleges that valuable intangible property was transferred from Learning Directions to School Data without compensation, including proprietary information and trade secrets. (Compl. ¶ 54, ECF Doc. No. 1.) The alleged proprietary information and trade secrets consist generally of knowledge about who to contact and how to go about obtaining contracts for

---

[4] Defendants' Motion to Dismiss (ECF Doc. No. 14-1) and Reply (ECF Doc. No. 19) do not contain paragraph or page numbers. The cited page numbers refer to the numerical page count in the document as it was filed on the docket.
[5] The Court takes judicial notice of the information contained in the DOE website (http://schools.nyc.gov/Offices/dcp/DepartmentofEducationProcurementPolicyandProcedures.pdf) as a public record. See Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv., 777 F. Supp. 2d 424, 432 n.6 (E.D.N.Y. 2011).

services and supplies with schools in the New York City area. (Compl. ¶ 55, ECF Doc. No. 1.)

The Trustee specifically alleges that Learning Directions acquired

> knowledge of important points of contacts at specific schools in charge of outsourcing and approving contracts with outside vendors for goods and services to schools, contact information about individuals within the New York City Department of Education who have authority regarding approving contracting for services and/or products for schools with outside vendors, contact information and inside information as to how the process at the New York City Department of Education functions/operates with regard to outside vendors obtaining approval for contracts to supply goods and services to the New York City Department of Education and its schools, points of contact and information regarding the names and identities of outside consulting groups and individuals who can facilitate a vendor obtaining contracts with the New York City Department of Education and its schools, the actual and potential software and testing needs of public and non-public schools in the greater New York City area, and profitable lines of business regarding the goods and services needed [at] such schools and the New York City Department of Education, among other things.

(Compl. ¶ 27, ECF Doc. No. 1.)  The Trustee alleges that this information was proprietary and was not readily available or easily discernible to the public and other vendors. (Compl. ¶ 29, ECF No. 1.)  The intangible property allegedly transferred to School Data also included software and customer goodwill. (Compl. ¶ 55, ECF Doc. No. 1.)

Intangible property such as proprietary information, trade secrets, and goodwill may be the subject of a fraudulent transfer claim. *See, e.g.*, Defiance Button Mach. Co. v. C & C Metal Products Corp., 759 F.2d 1053, 1063 (2d Cir. 1985) (holding that confidential customer list developed through substantial effort was a trade secret);  Levitt Corp. v. Levitt, 593 F.2d 463, 468 (2d Cir. 1979) ("Goodwill is a valuable property right derived from a business's reputation for quality and service.") Here, the Trustee has alleged the existence of proprietary information, trade secrets, and goodwill and the transfer of that property to School Data.

Defendants respond by pointing to a document available on the DOE website entitled "Procurement Policy and Procedures" (the "DOE Procedures").[6] The purpose of the DOE Procedures is, among other things, to "ensure appropriate public access to contracting information." (DOE Procedures at 1.) The DOE Procedures provide guidelines on both the procurement process employed by New York schools and the methods by which contractors are selected. (DOE Procedures at 14-81.)

Defendants argue that the availability of the DOE Procedures demonstrates that no proprietary information was transferred to School Data. The Trustee, however, has alleged Learning Directions transferred information not available to the general public to School Data, and that Learning Directions acquired information about the DOE's contracting processes that is not publically available or generally known to potential competitors, including information concerning specific points of contacts at specific schools, and within the DOE, with authority to approve contracts with outside vendors; inside information as to how the DOE functions with respect to outside vendor contracts; the names and identities of consulting groups and individuals who can facilitate the process; the software and testing needs of schools in the New York City area; and profitable lines of business for outside vendors with schools and the DOE. (Compl. ¶¶ 27, 54-55, ECF Doc. No. 1.) Whatever the DOE Procedures may contain, it is plausible that an experienced vendor such as Learning Directions could develop information not set forth in the DOE Procedures as alleged in the Complaint.

Geltzer v. Bloom (In re Silverman Laces, Inc.), 404 B.R. 345 (Bankr. S.D.N.Y. 2009), relied upon by Defendants, does not support dismissal of the Complaint. There, the court made a determination about the value of an allegedly proprietary customer list after a trial, in which it

---

[6] NEW YORK CITY DEP'T OF EDUC., PROCUREMENT POLICY AND PROCEDURES (2012), available at http://schools.nyc.gov/Offices/dcp/DepartmentofEducationProcurementPolicyandProcedures.pdf.

received testimony from five witnesses over a period of three days. Id. at 349. Whether the proprietary information at issue in that case had any value was ultimately a factual question that turned on the evidence presented. The same is true here. Whether Learning Directions developed valuable proprietary information that it transferred to School Data is a question of fact that cannot be decided at this stage in the case.

Crenshaw v. McKinley, 116 F.2d 877 (2d Cir. 1941), cited by Defendants, is also distinguishable. In that case, a trustee filed a fraudulent transfer action against the debtor's wife because the debtor had started a new company in her name doing the same business. Id. at 878-79. The court found that the trustee had failed to state a claim because the debtor did not transfer any property. Id. at 880. The crucial difference between Crenshaw and the instant case is that the property alleged to have been transferred in Crenshaw was the debtor's "credit," defined as his reputation in the industry. Id. The court held that this was not a form of property that could be the subject of a fraudulent transfer claim. Id. Here, the Trustee's claims are not based upon a transfer of the Debtor's reputation in the industry; the Complaint alleges that Learning Directions' proprietary information, software, and goodwill were transferred to School Data, which enabled it to continue Learning Directions' business. This more than enough to satisfy the requirement that the complaint allege plausible claims based upon the transfer of such property.

As to the software, the Trustee alleges that the Debtor and Learning Directions "acquired and/or created" software used for "student testing and analysis of tests." (Compl. at ¶ 28, ECF Doc. No. 1.) Defendants respond by arguing that no software was transferred between Learning Directions and School Data, and that any software sold by Learning Directions was not owned by Learning Directions.[7]

---

[7] Defendants point to deposition transcripts to support these contentions. That material, which is outside the pleadings, was not considered in deciding this motion.

This too is a factual argument. Defendants' contentions about who the software belongs to, whether it was proprietary, and whether it has value hinge on the facts. Accepting the factual allegations in the Complaint as true, the Trustee has adequately pled that proprietary software existed and was transferred to School Data.

### 2. *Tangible Property*

In addition to the intangible property discussed above, the Trustee also alleges that the tangible property of Learning Directions, including computers and office equipment, was transferred to School Data. Defendants did not challenge this allegation, and the Trustee has met his burden to plead the transfers of this tangible property.

### 3. *The Lease*

The Trustee also alleges that School Data obtained a lease for the same office space used by Learning Directions without paying compensation to Learning Directions. (Compl. ¶¶ 56-57, ECF Doc. No. 1.) This allegation, however, is a conclusory statement without any factual support. The Trustee does not allege that the lease was below market or that Learning Directions paid for School Data's use of the space, and has not met his burden to adequately plead a transfer of property with respect to the lease of premises for Learning Directions and School Data. Therefore, Defendants' motion is granted with respect to every claim to the extent such claim alleges a transfer of the lease.

### B.    Misappropriation of Trade Secrets (Claim Eleven)

To state a claim for misappropriation of trade secrets, the plaintiff must allege that "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990) (internal quotations omitted). New York courts consider the following factors when determining whether a trade secret exists:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others

Ashland Mgmt. Inc. v. Janien, 624 N.E.2d 1007, 1013 (N.Y. 1993) (quoting Restatement of Torts § 757 comment b) (internal brackets omitted).

In Friedman v. Wahrsager, 848 F. Supp. 2d 278 (E.D.N.Y. 2012), the plaintiff alleged that defendants had transferred a customer list in violation of a duty of confidence. Id. at 301. The defendants argued in their motion to dismiss that the items in question were not trade secrets. Id. The court noted that whether a customer list constitutes a trade secret depends on the confidential nature of the list and whether the information in it is not otherwise readily ascertainable. Id. at 302 (quoting Defiance Button Machine, 759 F.2d at 1063). The court determined that the ultimate inquiry was a question of fact, and that the plaintiff had sufficiently pled the claim. Id.

Here, the Trustee has alleged the existence of trade secrets belonging to Learning Directions consisting of proprietary information "about how a vendor obtains contracts for goods or services with the [DOE] and New York City Schools, what types of goods or services are needed by the [DOE] and its schools, [and] how to get a contract approved to provide those entities with goods and services . . . ." (Compl. ¶ 55, ECF Doc. No. 1.) He also alleged that this information was improperly obtained by Defendants. (Compl. ¶ 130, ECF Doc. No. 1.) Defendants argue that the alleged proprietary information and trade secrets are readily ascertainable on the DOE's website. (Mot. to Dismiss at 5-6, ECF Doc. No. 14-1.) As explained above, this factual argument is insufficient to support a motion to dismiss.

To state a claim for misappropriation, the Trustee must also plead that Defendants used the misappropriated trade secret. Defendants contend that the Trustee has failed to do so because he

has not alleged specific instances where Defendants used the alleged trade secrets. (Mot. to Dismiss at 11, ECF Doc. No. 14-1.) Defendants rely on <u>Jung v. Chorus Music Studio, Inc.</u>, No. 13-cv-1494, 2014 U.S. Dist. LEXIS 128103, 2014 WL 4493795 (S.D.N.Y. Sept. 11, 2014), where the court ruled that a proposed claim of misappropriation of trade secrets was futile because the claimants (1) did not detail the ways the trade secrets were used, (2) did not identify any customers contacted, and (3) did not identify any other business ventures. <u>Jung</u>, 2014 U.S. Dist. LEXIS 128103, at *23, 2014 WL 4493795, at *8. Here, however, the Trustee has alleged that Defendants used the alleged trade secrets to secure contracts with the DOE and did so using newly-created School Data. The specifics of the proprietary information and trade secrets involved, and the instances when they were used, is the type of information particularly within the control of Defendants that the Trustee may plead on the basis of information and belief. Therefore, Defendants' motion is denied with respect to claim eleven of the Complaint.

C.    <u>Actual Fraudulent Conveyance Under New York Debtor and Creditor Law § 276 and 11 U.S.C. § 548(a)(1)(A) (Claims Two and Six)</u>

The Complaint seeks relief under DCL § 276, which is made applicable to this case through § 544(b) of the Code and provides that a conveyance may be set aside when it is made with "actual intent … to hinder, delay, or defraud" creditors. N.Y. Debt. & Cred. Law § 276. Section 548(a)(1)(A) of the Code likewise provides that a trustee may avoid a transfer of an interest of the debtor in property if the transfer was made with "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A). Claims under these statutes must be pled according to Rule 9(b). <u>Atlanta Shipping Corp. v. Chem. Bank</u>, 818 F.2d 240, 251 (2d Cir. 1987) (holding that claims under DCL § 276 must be pled according to Rule 9(b)); <u>Manhattan Investment</u>, 310 B.R. at 505 (holding that claims under 11 U.S.C. § 548(a)(1)(A) must be pled according to Rule 9(b)). The principal difference between DCL § 276 and § 548(a)(1)(A) of the Code is how far back the

Trustee can go to avoid a transfer: under DCL § 276, the statute of limitations is six years; under § 548(a)(1)(A), only transfers occurring within two years before the filing date may be avoided. Miller v. Polow, 787 N.Y.S.2d 319, 320 (N.Y. App. Div. 2005); 11 U.S.C. § 548(a)(1).

    *1. The Particularity Requirement*

    To satisfy Rule 9(b)'s particularity requirement, the plaintiff generally must allege "(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto." Pereira v. Grecogas Ltd. (In re Saba Enterprises, Inc.), 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009); see also Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 646 (E.D.N.Y. 2003). Courts often apply a more relaxed standard to the particularity requirement when a trustee in bankruptcy alleges actual fraud. Saba Enterprises, 421 B.R. at 640; Manhattan Investment, 310 B.R. at 505. This "relaxed standard does not eliminate the particularity requirement, [but] the degree of particularity required should be determined in light" of the circumstances of the case. Devaney v. Chester, 813 F.2d 566, 569 (2d Cir. 1987). The particularity requirements serve to put the defendant on sufficient notice of the alleged fraudulent conduct to be able to answer and defend the allegations. Saba Enterprises, 421 B.R. at 641. The intent element may be alleged generally so long as the facts alleged are sufficient to support a strong inference of fraudulent intent. Shields, 25 F.3d at 1128.

    Under Rule 9(b), as applied to a trustee in bankruptcy, the Trustee has met his pleading obligations. First, the Trustee identified the particular property allegedly transferred sufficiently to put the defendants on notice. The Complaint specifically describes interests in property allegedly belonging to the Debtor that were the subject of fraudulent transfers, including proprietary information regarding contracting with the DOE, computers, software, office equipment, and the business goodwill. Second, the Trustee adequately alleged timing by pleading that the transfers occurred during the period in 2010 when Learning Directions stopped doing business and School

Data began doing business. This is sufficient to put Defendants on notice of the timing of the alleged transfers, particularly in this case where the Complaint alleges the Debtor worked for both companies, the companies used the same office space, and the office space was located in the house where both the Debtor and Collins reside. Third, the Trustee has adequately alleged that the transfers were made for no consideration and Defendants have not contested this point.

The Trustee has not, however, adequately alleged that any of the transfers took place within the two-year look back period under § 548(a)(1)(A) of the Code. The Trustee's allegations in this regard consist of a bare recitation that, upon information and belief, some of the alleged transfers occurred during the two-year period prior to the filing date. This does not meet the requirements of Rule 9(b) even under the relaxed standard applied to a bankruptcy trustee. See Alnwick, 281 F. Supp. 2d at 646 (holding that vague reference to a year does not meet Rule 9(b)'s particularity requirement). The allegations are not sufficient to put Defendants on notice as to which alleged transfers may be subject to avoidance under DCL § 276 and which may be subject to avoidance under § 548 of the Code. Therefore, Defendants' motion is granted with respect to count six of the Complaint.

   2.  *Fraudulent Intent*

As intent is rarely susceptible to direct proof, courts rely on the badges of fraud[8] to provide circumstantial evidence of intent. Kaiser, 722 F.2d at 1582. Additionally, both "[t]he transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the

---

[8] Traditional badges of fraud include: "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry." Kaiser, 722 F.2d at 1582-83.

property" and "[t]he shifting of assets by the debtor to a corporation wholly controlled by him" are strong indicators of fraudulent intent. <u>Id.</u> at 1583.

The Trustee has pled sufficient badges of fraud to adequately allege the Debtor's fraudulent intent. The Complaint alleges that Defendants paid no consideration for the alleged transfers. (Compl. ¶ 54, ECF Doc. No. 1.) It also alleges that the Debtor transferred the property to another entity under the nominal control of his wife, who had no experience running this type of business, while he actually controlled the business and received benefits from it. (Compl. ¶¶ 47-52, 114-15, ECF Doc. No. 1.) Therefore, Defendants' motion is denied with respect to count two of the Complaint.

D.    <u>Trustee's Remaining Claims</u>

Defendants have challenged claims one, three, four, five, seven through ten, and twelve solely on the basis of the argument, discussed in section A above, that no transfer of property from Learning Directions to School Data occurred or is adequately alleged. As discussed above, the Trustee adequately alleged the existence of transfers of property in the Complaint. Therefore, Defendants' motion is denied with respect to these claims.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted with respect to all claims to the extent they allege the transfer of a lease between Learning Directions and School Data, granted with respect to claim six, and denied with respect to all other claims. The Trustee is granted leave to replead.

**Dated: Brooklyn, New York**
**November 3, 2015**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**

17